in the hands of the government and was in that vehicle, then he would not have renewed the phone number so that he could be tracked. So it's clear the phone is lost property, not abandoned property, and the residue of having a password on the phone assures that his privacy was not abandoned. In fact, the password-protected phone protects the most valuable part of it, which is the content, not the physical phone. So there was residual privacy in that locked phone, and that's emblematic of a reservation of privacy in the property. Can you answer a question for me about the standard of review? I'm having difficulty figuring out. It seems to me that what the district court said when the district court said that the phone was abandoned is a fact-finding. Do you agree with that, or am I misunderstanding? I believe that with respect to the abandoned property, his expectation of privacy is a question of fact that you can review for clear error. Okay. I mean, I think that's right. If clear error is the standard of review, then what your argument is is that no district court presented with these factual circumstances could ever say that there was abandonment, right? I mean, that's what we would have to say to reverse. I don't know if it would go that high, Judge Brasher, but what I would say is that his subjective knowledge of where the phone is is supported by the fact that he lost it because he got a new number or a new phone the next day with the same number. And so the idea of the government's case is that, well, he knew it was lost and he didn't come back to I think this court under U.S. v. Ross has to look at the abandonment in the context of the invasion of his privacy interests, not just say, well, it's abandoned, so he's not herewithstanding. He's here and has a stake at the table under the Fourth Amendment. So then the question becomes, you know, maybe it's an attenuated interest, but it doesn't mean that they've cured the illegal search that they subsequently did because that's one of the most interesting parts of it. How would he retrieve it? Well, I think that he would have to go back to the car. He'd have to figure out where it was. Well, he could have possibly been arrested. So that's what the government's argued that that's the reason he didn't go back. But that assumes that he even knew where the phone was. And I think that's an assumption that we can't readily say because, and at the moment that they searched the phone, meaning that they got it, they made representations in their warrant that it appeared to be the co-defendant's phone, and so Right, but didn't your client already knew at that point that his co-conspirator Addison had been arrested? Did he not? I believe that's a reasonable inference to know that his co-defendant had been arrested, but I don't think that that means that his phone is there with his co-defendant. So moving to the point, though, that regardless of where the phone's located Well, he knew he had his phone with him in the car, in the Hyundai, wasn't it? I don't know what kind of car it was, but didn't he know? It was a Hyundai. It's an inference that's being argued because there's no record evidence that he knew that the phone was in the car. With respect to the illegal search that was done, that's the most problematic part of the government's case because, in this case, they took the phone, and I think it's important to go through the litany of what occurred and what Detective Breedlove overlooked. He never went to see the judge before his vacation. He never checked the file after he got back from vacation for a warrant. He personally never went down there. And, by the way, the Fourth Amendment does not go on vacation like he did. It stays attended and attached. He went into the file when he came back to get the phone. He had to physically bring the phone to Sergeant Power to search, and at that point, he didn't deliver him a signed warrant because there wasn't one because he'd never been to the judge. So, then Power conducts a search and completes a download with zero authority, takes the information, gives it to Breedlove, and Breedlove looks at it and says, well, there's some incriminating stuff. Then he gives the data to an outside agency, the Pasco Sheriff's Office, and also disseminates it to a task force. Then, suddenly, when Toner, who was in Pasco where the car was originally located after the chase, he says, well, do you have a copy of the warrant? I just want it for my file. And Breedlove says, wow, I never went to a judge. Two days later, on the 10th, he goes and gets the warrant signed acknowledging his mea culpa, but the problem with that is the inevitable discovery doctrine does not protect that because the inevitable discovery doctrine, this court has said, it's a key element. There must be an active pursuit prior to the occurrence of the illegal conduct, an active pursuit of the means to get the evidence. They're arguing, well, he had crafted the warrant. The problem with that is that the last date of any lawful activity he'd done was November 28th. That was when he, two days after he got the warrant. So what we have here is the perfect intersection of a lack of warrant with a delay, and that makes it material. There's a 44-day delay in this case. We argued that that made the warrant stale, but really, you could rule that it's the intersection of the lack of any active pursuit of completing this warrant coupled with the delay. In fact, what we really have here is a retreat of action. He didn't do anything, and if you look at the origins of the inevitable discovery doctrine, Nix v. Williams, it's a 1984 Supreme Court case where they got the location of a victim's body from an illegal interrogation, but the police had already been out in the woods near where the body was located conducting systemic searches. We don't have that here at all. In fact, what we have is Breedlove had not done anything. He wasn't even looking to get the warrant signed. And so, as we said in our brief... Can I ask you a question just to correct something maybe that I'm misunderstanding? But I thought the facts were that Breedlove had prepared the warrant application and just had it in his desk or something like that. He did, but you're correct. The last date, as I said, was November 28th, where he prepared it, and in fact, just so we're clear, Sergeant Power had reviewed it, but then it went back in the file, and then nothing happens. Well, but that's why Powell, when he retrieved the information, he thought the warrant had been issued because he had actually prepared, he had actually reviewed and authorized the warrant, correct, to be sent to the judge? Judge, he had made edits. You're correct in giving it back, but the point is nobody ever went to a judge. That's a physical fact. No, I understand that, but that's the issue. As Powell, when he retrieved the information, he had authorized and edited the warrant to be submitted to the judge, so he assumed that it hadn't been done. I think that there was an assumption, but that doesn't satisfy the active pursuit doctrine of this court. No, I understand your argument, Counsel. I'm just trying to correct the record here. Can you answer a quick question for me about the active pursuit issue? Is that a fact-finding as well? Is that a factual question, whether the agents were actively pursuing the investigation? I think you would look at facts, but it's a legal conclusion if they were actually doing something. Okay. And so, as I said in our brief, where the effort to search proceeds, but the effort to obtain the constitutional permissions is abandoned. He basically abandoned the effort to complete the warrant, then the inactivity should preclude application of the doctrine. I have five seconds. I'm happy to continue, or I'll just rely on a rebuttal shortly. Thank you. Thank you, Counsel. Good morning, Your Honors. May it please the Court. Jermaine Sider for the United States. The district court here did not clearly err in finding that Mr. Turner had abandoned his phone. The standard here is clear error, and so unless this court is convinced on all the record that the court made a clear mistake of fact, this court should affirm. Mr. Turner knew where the phone was. The district court made that finding, and that is supported by the record. He knew that it was in the rental car, which is the last place he had used it immediately before the robbery, and he knew what happened to that rental car. He had been following Mr. Addison as he was fleeing from the robbery, and he knew that the car crashed, and he knew that Mr. Addison was arrested. So, he made no effort after that to find his phone. There's nothing in the record to show that he asked about it or that he ever intended to go retrieve his phone. So, for that reason, that fully supports the district court's finding. And this idea that, well, he used a different phone number when he got a replacement phone, who knows why he did that? But it doesn't make the district court's finding clearly erroneous, and we're supposed to infer all the facts, draw all the reasonable inferences and the light most favorable to the suppression order to the district court's decision. And viewing these facts and the light most favorable to the decision, it is completely supported. As for the idea that the password leaves some kind of residual privacy, a password shows an expectation of privacy in someone so long that you have control and custody over the item. It does not show an expectation of privacy to last in perpetuity, regardless if all of your actions make manifest that you want nothing to do with this phone. And that's exactly what Mr. Turner did here. What do you think about this issue that I'm having with the case? I think, you know, given that it was a fact-finding, I think the district court, we have to defer to the district court on the idea that the phone was abandoned, right? I mean, the physical device, not lost but abandoned. But what do you think about drawing a line that says, well, look, just because the physical item was abandoned, that doesn't necessarily mean the information that's stored in that was abandoned. You know, if you abandon, for example, a computer, you're not necessarily abandoning your privacy interest in the files on that computer. What do you think about some line like that? Well, that would go against this court's precedent. I mean, we know that you can abandon cell phones. I mean, the district court's decision in Sparks and Green, they abandoned the cell phone. Yeah, but they didn't have passwords, though. So, I mean, and that would be, I guess, where, you know, you could say, look, by just leaving a phone that anyone could access without any locking device, by leaving that physical device, you also abandoned the information on it. But here, it's somewhat of a different case where I abandoned the physical device, but I still had an expectation of privacy in that information on it. What do you think about that? Well, two things. One, the password is just one circumstance that's to be considered in light of all the circumstances making the finding of abandonment. But two, I mean, this court has held that, has recognized and held that you can abandon a locked item. This court's 1994 decision in Ramos involved a locked briefcase where this court acknowledged that a locked briefcase, just like any other property subject to the Fourth Amendment, can be abandoned. And in this court's 1992 decision, and later Rivas, involved a locked suitcase. And this court held that the defendant, by abandoning the suitcase, abandoned everything and did not draw a distinction between the item and its contents and did not, and it did not matter that it was locked. This password here is nothing more than a lock on its contents, and it, that, but that expectation of privacy that the lock represents ends when you have decided to discard, leave behind, and relinquish this item. And as for even turning to the merits, I want to address the inevitable discovery, his inevitable pursuit here, because Mr., Detective Breedlove had already completed the warrant. But I also just want to point out that on page six of Mr. Turner's reply brief, he concedes the facts that would demonstrate that the independent source doctrine applies. He concedes that the warrant application included no information from the search, and he concedes that Detective Breedlove was not prompted by anything from the search, that they had found in the search warrant. So that right there shows that the warrant application was not tainted by the search, and neither was the decision to seek the search warrant. Indeed, that decision had happened weeks earlier, in November. So this, nothing about the search of the phone tainted the decision to apply for the warrant. For that reason, too, this court, there's no reversible error in the district court's suppression motion order. Unless this court has any other questions, we'd rest on our break. Thank you. Thank you, counsel. Mr. Maddox, you have five minutes for rebuttal. The unintentional relinquishment of the phone did not compromise his privacy interests when you look at the dates. First of all, the robbery of the Wells Fargo occurred on November the 18th of 2017. What we're looking at is a warrant that had been applied for around the 26th of November. So at that point, the government's argument is he has to be calling the sheriff's office, asking where his phone is. That does not deal with the issue of the password. What I would bring this court's attention to is that there's case law in the circuit that says the phone is likely to contain non-contraband information of exceptional value to the owner of both a personal and a business nature. So when we look at this situation, we have to respect, go outside of the Rasheed Turner circumstances and look beyond what this court will be saying about people's legitimate privacy expectations in phones that now are these many computers that really run and govern their lives. And could there be evidence of a crime on a phone? Of course. We know. That's why we're asking that you remand and give him a new trial, because that phone was the gateway to a lot of evidence against him. Text messages, phone calls, and photographs, and so forth. But there's a whole field of personalized evidence that he did not forfeit his privacy in when he had a five-digit passcode. In this case, we know that there wasn't diligence in pursuing the warrant when he went on vacation. And the point of that is that it's just sitting there for 44 days. And 44 days, I guess my client could have gone and gotten it. 44 days, they could have remembered, you have to go see a judge to get a warrant signed. And one of the things we He might have thought that the government wouldn't be able to get into the cell phone and get the information. We don't know how intelligent this chap is, do we? You don't know how much he knows about cell phones and how you can get the information out? Right. Your point, he could have been resting on the fact that it wouldn't be a penetrable thing through the cell bright. We just don't know. Which could be an explanation of why he didn't try to get it. And that could be, but just because he doesn't try to get it doesn't mean he's saying it's free reign on my phone. I would like to insert that while we're looking at reasons to excuse the government is warrantless search, the fact that he did not recruit a third party to go do the warrant while he was on vacation in homicide school working his other cases, I think shows when you're asking Judge Brasher about, was it active pursuit? No, because there's a whole contingency of officers that can go take a warrant that he's already done and get the judge to sign it. That's another material failure and why Leon should not apply to this case, because at some point we've got to draw a limit on how far Leon goes. And with regard to her argument that the independent source doctrine applies, I simply wanted to point out that discovery by means wholly independent of any constitutional violation, that certainly didn't happen here. The phone was searched without a warrant. The fact that they went and got a warrant after the fact is like saying, well, non-pro-tunk, we cure everything. That's not what the independent source doctrine is. So I thought, but I thought that, and just correct me if I'm wrong, but I thought the evidence was that they used only information that they had before they searched the phone to get the warrant for the phone. So basically they used just the draft affidavit that they already had before they searched it. I don't disagree with that. That is accurate. And that's what we were conceding, but we're not conceding that you shouldn't be, can't use as an independent source the very violation that occurred. I mean, at some point you're sort of bootstrapping this up into a situation where they're going to be able to cure every defect. And at this point, when you look at how the different doctrines should not apply to excuse the conduct, at some point there has to be a prophylactic effect. And I'd like to say that the sergeant said it was a common practice that he would initiate a search on a phone, this container of amazing privacy, without having a signed warrant. He would just, if they handed it to him, he assumed that it was affirmed. That's not reasonable. Why do we want to allow this evidence in? There has to be some sort of, I would say, oh, error, where is thy sting? There has to be at some point where Leon isn't going to excuse every single thing, and that if not, the rule is really rendered a limp instrument. And I don't think that's what the Fourth Amendment was intended to. Because as I said, it doesn't go on vacation. Thank you very much, Your Honors, for listening. Thank you both for your arguments. We will take the matter under advisement. Thank you. Thank you both. The next case on the calendar is Police and Federal Retirement Systems of the City of Detroit v. Oxygen, Inc.